WATERBURY TEACHERS ASSOCIATION *v.*
FREEDOM OF INFORMATION
COMMISSION ET AL.
(14936)
(14937)
(14938)

Foti, Heiman and Spear, Js.

Argued May 29—officially released August 27, 1996

*Pamela D. Siemon*, with whom, on the brief, were *John J. Cassidy, Jr.*, and *Thomas G. Parisot*, for the appellants (defendant Marc S. Ryan et al.).

*Catherine Wassel-Nasto*, commission counsel, with whom were *Mitchell W. Pearlman*, general counsel, and *Justine C. Rakich-Kelly*, commission counsel, for the appellant (named defendant).

*William J. Dolan*, for the appellee (plaintiff).

FOTI, J. The defendants, Marc S. Ryan, James B. Craig, the Waterbury Republican-American and the Freedom of Information Commission (commission), appeal from the judgment of the trial court sustaining the appeals of the plaintiff Waterbury Teachers Association (union) from decisions of the commission.[1] On appeal, the defendants claim that the trial court (1) failed to accord proper deference to the decisions of the commission by substituting its own judgment in interpreting the Freedom of Information Act (FOIA), and (2) improperly concluded that the grievance hearings fell within the exclusionary provisions of General Statutes § 1-18a (b).[2] We affirm the judgments of the trial court.

---

[1] The Waterbury board of education was also named as a defendant in the action, but it joined in the brief of the plaintiff union.

[2] General Statutes § 1-18a (b) provides in relevant part: " 'Meeting' means any hearing or other proceeding of a public agency, any convening or assembly of a quorum of a multimember public agency, and any communication by or to a quorum of a multimember public agency, whether in person or by means of electronic equipment, to discuss or act upon a matter over

The record reveals the following relevant facts. The union is designated as the exclusive representative of the teachers of the Waterbury board of education (board) within the meaning of General Statutes § 10-153a.[3] Pursuant to the collective bargaining agreement between the board and the union, the union may file grievances on behalf of its teacher members against the board for any alleged violations of the agreement. At the time the hearings at issue were conducted, the defendants Ryan and Craig were members of the staff of the defendant newspaper, the Waterbury Republican-American.[4]

The first appeal to the trial court arose from the following facts. On April 29 and May 6, 1992, the board conducted hearings on grievances brought by the union. On May 26, 1992, Ryan, Craig and the Waterbury Republican-American filed a complaint with the commission, alleging that the grievance hearings were held without adequate notice and that members of the newspaper's staff were wrongfully denied access to the meetings in violation of the FOIA.

On April 28, 1993, the commission ruled that the hearings conducted by the board's committee on grievances were subject to the open meeting provisions of the FOIA,[5] and that, by not providing notice and not

which the public agency has supervision, control, jurisdiction or advisory power. 'Meeting' shall not include . . . strategy or negotiations with respect to collective bargaining . . . ."

[3] General Statutes § 10-153a provides in relevant part: "Members of the teaching profession shall have and shall be protected in the exercise of the right to form . . . any organization for professional or economic improvement and to negotiate in good faith through representatives of their own choosing with respect to salaries, hours and other conditions of employment . . . ."

[4] Ryan was employed by the newspaper as an editorial writer and Craig was a reporter with the newspaper.

[5] General Statutes § 1-21 provides in relevant part: "Meetings of government agencies to be public. . . . (a) The meetings of all public agencies . . . shall be open to the public. . . ." The parties do not dispute that the

permitting the newspaper's staff members to attend the hearings, the union and the board had violated the FOIA. The union appealed to the trial court from the commission's decision pursuant to §§ 1-21i (b)[6] and 4-183 (a).[7]

The second appeal arose from grievance hearings held on December 15, 1993, while the union's appeal was pending in the trial court. The board and the union again did not provide notice of the meetings and denied Ryan, Craig and the Waterbury Republican-American the opportunity to attend the meetings. On January 28, 1994, Ryan, Craig and the Waterbury Republican-American filed a second complaint with the commission. The commission, on the basis of its decision on the earlier complaint, ruled that the board and the union had violated the FOIA.[8] The union appealed that decision to the trial court.

On March 24, 1995, the trial court ordered the appeals consolidated. On June 8, 1995, the trial court found in

board of education's committee on grievances is a public agency pursuant to § 1-18a (a).

[6] General Statutes § 1-21i provides in relevant part: "(b) (1) Any person denied the right to inspect or copy records under section 1-19 or wrongfully denied the right to attend any meeting of a public agency or denied any other right conferred by sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, 1-20a and 1-21 to 1-21k, inclusive, may appeal therefrom to the Freedom of Information Commission, by filing a notice of appeal with said commission. . . .

"(d) Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183. . . . The commission shall have standing to defend, prosecute or otherwise participate in any appeal of any of its decisions and to take an appeal from any judicial decision overturning or modifying a decision of the commission. . . ."

[7] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. . . ."

[8] At a January 26, 1994 hearing, the board heard a grievance brought by the school administrators of Waterbury. This grievance hearing was also subject to the commission's decision. The school administrators of Waterbury, however, did not join the union in any subsequent actions.

favor of the union. The trial court held that the proceedings were not "meetings" as the term is used in the FOIA, but instead, were "negotiations with respect to a collective bargaining agreement," a recognized exception, pursuant to § 1-18a (b), to the mandate of open meetings set forth in § 1-21. On the basis of that finding, the trial court determined that the grievance hearings were exempt from the public access provisions of the FOIA.

The dispositive issues on appeal are whether the trial court exercised proper deference with respect to the commission's decision, and whether the trial court properly concluded that grievance proceedings between the board and the union were statutorily exempt from the open meeting requirement of the FOIA pursuant to § 1-18a (b).

Before addressing the substantive issues involved, we first set forth our standard of review. "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act [General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency]. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . ." (Citations omitted; internal quotation marks omit-

ted.) *Hartford* v. *Freedom of Information Commission*, 41 Conn. App. 67, 72–73, 674 A.2d 462 (1996).

The defendants first claim that the trial court failed to accord the proper deference to the commission's interpretation of provisions of the FOIA. The trial court's standard of review is governed by the same principles set out previously in discussing this court's standard of review. Pursuant to our standard of review, we examine whether the conclusions of law reached by the trial court resulted from a correct application of the law to the facts of this case.

Section § 1-18a (b) was recently interpreted by our Supreme Court in *Glastonbury Education Assn.* v. *Freedom of Information Commission*, 234 Conn. 704, 663 A.2d 349 (1995). At the time the trial court ruled on the present case, however, neither the commission nor the trial court had the benefit of that analysis. Nevertheless, earlier judicial decisions have construed § 1-18a (b). See *Glastonbury Education Assn.* v. *Freedom of Information Commission*, 35 Conn. App. 111, 119, 643 A.2d 1320 (1994), aff'd, 234 Conn. 704, 663 A.2d 349 (1995) (arbitration hearings provided for in collective bargaining agreement as means to resolve disputes not meetings within § 1-18a [b] because they are continued negotiations); *Bloomfield Education Assn.* v. *Frahm*, 35 Conn. App. 384, 646 A.2d 247, cert. denied, 231 Conn. 926, 648 A.2d 161 (1994) (mere filing of grievance does not reveal any strategy or negotiations and therefore not exempt from FOIA disclosure requirements); *Connecticut Employees Union Independent, Inc.* v. *Board of Labor Relations*, 43 Conn. Sup. 1, 635 A.2d 891 (1993) (grievance settlement agreement constitutes supplemental understanding of collective bargaining agreement); *Fairfield* v. *IAFF, Local 1426*, Superior Court, judicial district of Fairfield, Docket No. CV 93-0304287 (July 11, 1994) (grievance hearing part of ongoing collective bargaining agreement).

Here, the trial court ruled that the commission interpreted the statute in a manner inconsistent with judicial interpretations. We must determine if, in light of our deference to the commission in interpreting the FOIA, the trial court properly concluded that the grievance hearings are excluded from the open meetings requirement of the FOIA.

Section 1-21 requires that all public agency meetings, with the exception of executive sessions, be open to the public, and that such meetings be properly noticed. Section 1-18a (b) excludes strategy and negotiations, with respect to collective bargaining, from the definition of meetings that are subject to these requirements. Resolution of this appeal, therefore, requires a determination of whether a hearing before the grievance committee of the Waterbury board of education fits within the "negotiations" exception to the open meetings policy of the FOIA.

"Inquiry into the scope of the statutory exclusion for collective bargaining contained in § 1-18a (b) must commence with the recognition of the legislature's general commitment to open governmental proceedings. The overarching legislative policy of the FOIA is one that favors the open conduct of government and free public access to government records. . . . The sponsors of the FOIA understood the legislation to express the people's sovereignty over the agencies which serve them . . . and this court consistently has interpreted that expression to require diligent protection of the public's right of access to agency proceedings. Our construction of the [FOIA] must be guided by the policy favoring disclosure and exceptions to disclosure must be narrowly construed. . . ." (Citations omitted; internal quotation marks omitted.) *Glastonbury Education Assn.* v. *Freedom of Information Commission*, supra, 234 Conn. 711–12. Despite this open meeting policy, however, our Supreme Court recognizes that § 1-18a

(b) provides an exception for " 'strategy or negotiations' sessions that relate to collective bargaining." Id., 713.

In *Glastonbury Education Assn.*, our Supreme Court determined that the compulsory arbitration provisions of the Teachers Negotiation Act (TNA), General Statutes § 10-153a et seq., resembled negotiations and were therefore excluded from the meeting requirements of the FOIA. Id., 716–17. The TNA establishes a three step collective bargaining process to ensure the existence of a teacher contract by the beginning of the town's fiscal year. Id., 714. The court determined that "[t]hroughout the process, the threat of the arbitration panel's decision-making power provides a strong incentive for the parties to resolve outstanding issues." Id., 716.

The defendants attempt to distinguish the present case on the ground that, unlike the situation in *Glastonbury Education Assn.*, in which the disputes arose in entering into a collective bargaining agreement, the collective bargaining agreement between the union and the town was already in effect. Moreover, the defendants maintain that the grievance proceedings at issue in the present case constituted a quasi-judicial process, rather than the mediated arbitration process present in *Glastonbury Education Assn.* The defendants cite the portion of § 10-153a (c) that distinguishes collective bargaining, contract administration and grievance adjustment, contending that it evidences the legislative recognition of a difference between pure collective bargaining, or contract negotiation, and the grievance process. This distinction is not supported by the judicial interpretations of collective bargaining agreements.

In *Board of Education* v. *State Board of Labor Relations*, 217 Conn. 110, 584 A.2d 1172 (1991), our Supreme Court concluded that the duty to negotiate in good faith under the TNA "is an ongoing duty that continues after

initial contract negotiations are over . . . [including] the duty to negotiate any question arising under an existing contract." (Citations omitted; internal quotation marks omitted.) Id., 120–21. "If the contract requires arbitration of unresolved grievances, the duty to bargain in good faith includes the duty to participate in good faith in the grievance arbitration process, for dispute resolution under the grievance-arbitration process is as much a part of collective bargaining as the act of negotiating the contract." (Internal quotation marks omitted.) Id., 121.

"A grievance procedure involves the interpretation and enforcement of an existing group teacher contract. Insofar as the board has the power to make such a contract it follows that it has the power to agree on a method and forum for the purpose of settling disputes arising under the terms of the contract. It is an amicable and efficient means of resolving any differences within a contract previously acceptable to and executed by the parties." *West Hartford Education Assn., Inc.* v. *DeCourcy*, 162 Conn. 566, 588, 295 A.2d 526 (1972).

In this case, the dispute resolution process mandated by the grievance procedure is as much a part of collective bargaining as the act of negotiating the agreement. It provides a forum where the agreement will be interpreted and enforced. To draw a distinction between entering into the agreement and interpreting its meaning would sever an ongoing, continuous process that our Supreme Court views as a cohesive whole, incapable of such strict division. See *Board of Education* v. *State Board of Labor Relations*, supra, 217 Conn. 120–21. We conclude, therefore, that the phrase "with respect to collective bargaining" in § 1-18a (b) applies not only to the discussions in entering into an agreement, but also to the discussions in resolving disputes that may arise under the agreement.

Having concluded that the statutory exclusion to the open meeting policy of the FOIA can apply to discussions occurring after the parties have entered into a collective bargaining agreement, we must now determine whether the grievance hearings constituted negotiations. In resolving this issue, we look to the specific provisions of the collective bargaining agreement between the union and the board. A grievance is defined in the collective bargaining agreement as "[a] claim by either an employee or a group of employees, the [union], or the board that there has been an alleged violation, misinterpretation, or misapplication of a specific provision or group of provisions of this Agreement, or alleged discrimination or a condition affecting the employee's health and safety." The collective bargaining agreement provides a multistep grievance procedure, including both informal and formal sessions, through which to resolve disputes.[9] The grievance hearings at issue in

[9] Article 23, § 2, of the collective bargaining agreement sets out the grievance procedure to be followed. "Stage 1. (Informal)—the employee and a WTA representative (if the employee desires) shall discuss the grievance informally with the school official serving as the employee's immediate administrative superior. While the aforementioned is mandatory, it shall have effect on the running of the time limit of thirty (30) school days set forth in Stage 2, Level 1, below, within which a written grievance must be submitted to the employee's immediate administrative superior. Therefore, in the event it becomes apparent to the employee that the aforementioned discussion will not be held or completed within said thirty (30) day period, it is incumbent upon the employee to submit the written grievance to his immediate administrative superior in accordance with the provisions of Stage 2, Level 1, below. Stage 2. (Formal) LEVEL 1.— In the event a grievance is not satisfactorily resolved as a result of the informal discussion held pursuant to Stage 1 above, the employee shall reduce the grievance to writing, setting forth a statement as to the grounds for the grievance and the Article and Section of this Agreement alleged to have been violated, and shall, within thirty (30) school days after the occurrence giving rise to the grievance, submit the written grievance to his immediate administrative superior. The immediate administrative superior may request another meeting to discuss the grievance with the employee and a WTA representative, which they must attend, but in any event must answer the grievance in writing with copies to the employee and the WTA within five (5) school days following receipt of the written grievance. LEVEL 2.—In the event the

this case were at stage 2, level 3, which consists of hearings before the board.

The defendants contend that the presentation of testimony and other evidence creates a quasi-judicial setting and cannot be construed as negotiations. They cite our Supreme Court in *Glastonbury Education Assn.* v. *Freedom of Information Commission*, supra, 234 Conn. 718, which "postpone[d] to another day questions

grievance is not satisfactorily resolved as a result of the submission required by Level 1 above, the employee, by himself or through the association, may appeal the decision rendered on the grievance by his immediate administrative superior to the Superintendent provided said appeal is received by the Superintendent within five (5) school days following the date upon which the employee's immediate administrative superior answered the grievance. Within five (5) school days following timely receipt of an appeal filed pursuant to this Level 2, the Superintendent and/or his representative shall meet with the Employee, a WTA representative, and witnesses, if any, for the employee and/or the Board, for the purpose of hearing the appeal and shall within seven (7) school days following the date upon which said meeting is held, render his decision in writing, sending copies to the employee and the WTA. LEVEL 3.—In the event the grievance is not satisfactorily resolved as a result of the decision rendered by the Superintendent in Level 2 above, the employee, by himself or through the Association, may appeal said decision to the Board, provided said appeal shall be filed with the Clerk of the Board in writing, setting forth the basis for the appeal, within five (5) school days following the receipt of the Superintendent's decision. Within twenty four (24) school days after receipt of a timely appeal made pursuant to this Level 3, the Board shall cause a hearing to be held with the employee, the union, and witnesses, if any, for the employee and/or the Board , with respect to said appeal and shall, within five (5) school days following hearing, render a decision in writing with copies to the employee and the WTA. LEVEL 4.—In the event the grievance is not resolved as a result of the procedures of Level 3 above, the WTA may submit the grievance to binding arbitration in accordance with the Voluntary Rules of Labor Arbitration of the American Arbitration Association and subject to the limitations of Statute, including the Connecticut Arbitration Statutes; provided that the grievance is submitted to the AAA in writing by registered mail, return receipt requested and postage prepaid, no later than ten (10) school days following the receipt of the Board's decision pursuant to Level 3 above or the expiration of the time limits for making such decision, whichever shall occur first. Copies of the Demand for Arbitration sent to the AAA must also be sent to the Superintendent and to the Board. Fees and expenses of the Arbitrator shall be born equally by both parties.

concerning the validity of a more narrowly tailored [commission] order that requires open hearings only with respect to evidentiary presentations and permits [closed] sessions for discussion and argument about the contents of the parties' [settlement] offers."

"[W]e construe a contract as a whole and all relevant provisions are considered when determining the intent of the parties." *White* v. *Kampner*, 229 Conn. 465, 473–74, 641 A.2d 1381 (1994). In construing the collective bargaining agreement at issue in this case, we note that the plain language of the agreement establishes mandatory grievance procedures to resolve any disputes without judicial intervention. Although a grievance hearing may have a greater sense of formality than the informal discussions of earlier steps in the grievance procedure, it does not rise to the level of formality that is present in the later step of binding arbitration. On the basis of our Supreme Court's determination that binding arbitration falls within the exclusionary provision of § 1-18a (b), it is difficult, if not impossible, to conclude that a grievance hearing does not also consist of negotiations and, thus, fit within the exclusion of § 1-18a (b).

The purpose of the grievance procedure, to resolve disputes arising out of the collective bargaining agreement, is further proof that the grievance hearings consist of negotiations and exist to promote settlement between the parties. The presentation of witness testimony and the introduction of evidence merely provides a procedure by which the factual background of the dispute between the union and the board may be introduced and cannot be said to constitute a quasi-judicial setting as the defendants contend. The goal throughout each level of the grievance procedure is to reach a settlement between the parties. See *Hunt* v. *Prior*, 236 Conn. 421, 431–32, 673 A.2d 514 (1996).

The uncontradicted evidence before the commission demonstrates that the grievance proceedings present a forum in which to resolve disputes through settlement. The union president, Jack Cronan, testified before the commission that discussions would take place and evidence would be presented at these grievance hearings concerning which articles of the collective bargaining agreement allegedly had been violated. Cronan testified that a grievance hearing includes negotiation in an effort to find a remedy.

We conclude, therefore, that the trial court accorded proper deference to the commission's interpretation of provisions of the FOIA and that it properly sustained the appeal on the ground that grievance hearings before the board involved "negotiations with respect to collective bargaining" pursuant to the statutory exception of § 1-18a (b).

The judgments are affirmed.

In this opinion the other judges concurred.