WATERBURY TEACHERS ASSOCIATION *v.*
FREEDOM OF INFORMATION
COMMISSION ET AL.
(15543)
(15544)

Callahan, C. J., and Berdon, Katz, Palmer and Peters, Js.

Argued March 18—officially released May 13, 1997

*Thomas G. Parisot,* with whom, on the brief, were *John H. Cassidy, Jr.,* for the appellants in Docket No. 15543 (defendant Marc S. Ryan et al.).

*Clifton A. Leonhardt,* chief counsel, with whom were *Mitchell W. Pearlman,* general counsel, and, on the brief, *Victor Perpetua,* appellate attorney, and *Justine C. Rakich-Kelly* and *Joan M. Andrews,* commission

counsel, for the appellant in Docket No. 15544 (named defendant).

*William J. Dolan,* for the appellee in both cases (plaintiff).

*Opinion*

PETERS, J. The Freedom of Information Act, which requires the meetings of a public agency to be open to the public; General Statutes § 1-21;[1] defines the term "meeting" to exclude "strategy or negotiations with respect to collective bargaining." General Statutes § 1-18a (b).[2] The sole issue in these certified administrative appeals is whether grievance proceedings between a teachers union and a public school board come, in whole or in part, within the legislative exclusion for "strategy or negotiations."

This action arises from the consolidation of two appeals, the procedural history and factual underpinnings of which are undisputed. On April 29, 1992, and on May 6, 1992, the committee on grievances of the defendant Waterbury board of education (board) conducted grievance hearings at the initiation of the plaintiff, the Waterbury Teachers Association (union). The union had brought these grievances against the board on behalf of certain members as a result of alleged violations of the collective bargaining agreement in place between the board and the union. Although, pur-

---

[1] General Statutes § 1-21 provides in relevant part: "Meetings of government agencies to be public. . . . (a) The meetings of all public agencies . . . shall be open to the public. . . ."

[2] General Statutes § 1-18a (b) provides in relevant part: " 'Meeting' means any hearing or other proceeding of a public agency, any convening or assembly of a quorum of a multimember public agency, and any communication by or to a quorum of a multimember public agency, whether in person or by means of electronic equipment, to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power. 'Meeting' shall not include . . . *strategy or negotiations with respect to collective bargaining* . . . ." (Emphasis added.)

suant to § 1-18a (a),[3] the board is concededly a public agency, the board and the union agreed not to hold the grievance hearings in public. The complainants, Marc S. Ryan and James B. Craig (individual complainants), an editorial writer and reporter, respectively, and their newspaper, the defendant Waterbury Republican-American (newspaper), filed with the defendant freedom of information commission (commission), a complaint challenging the absence of public notice of, and public access to, these grievance hearings.

After a contested hearing, the commission concluded that the grievance sessions held by the committee on grievances should have been conducted in accordance with the terms of § 1-21 and ordered the board and the union to comply with the statute in the future. The commission came to the same conclusion with respect to a second complaint, also filed by the individual complainants and the newspaper, concerning another closed grievance hearing that had been held on December 15, 1993.

Pursuant to General Statutes §§ 1-21i and 4-183 (a),[4] the union appealed the validity of these orders to the

[3] General Statutes § 1-18a (a) provides: " 'Public agency' or 'agency' means any executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, including any committee of, or created by, any such office, subdivision, agency, department, institution, bureau, board, commission, authority or official, and also includes any judicial office, official or body or committee thereof but only in respect to its or their administrative functions."

[4] General Statutes § 1-21i provides in relevant part: "(b) (1) Any person . . . wrongfully denied the right to attend any meeting of a public agency . . . may appeal therefrom to the [commission], by filing a notice of appeal with said commission. . . .

"(d) Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183. . . . The commission shall have standing to defend, prosecute or otherwise participate in any appeal of any of its decisions and to take an appeal from any

trial court.[5] After consolidating these separate actions, the court sustained the union's appeals, concluding that grievance proceedings were "part of the ongoing collective bargaining process." The individual complainants, the newspaper and the commission then appealed to the Appellate Court, which, after determinining that "grievance hearings constituted negotiations," affirmed the judgments of the trial court. *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 42 Conn. App. 700, 709, 682 A.2d 125 (1996). We granted, in identical terms, the two petitions for certification to appeal filed, respectively, by the individual complainants and the newspaper, and by the commission.[6] We reverse the judgments of the Appellate Court.

In analyzing the scope of the statutory exclusion for "strategy or negotiations with respect to collective bargaining" contained in § 1-18a (b), we do not write on a clean slate. In *Glastonbury Education Assn.* v. *Freedom of Information Commission*, 234 Conn. 704, 711–13, 663 A.2d 349 (1995), we recently construed this subsection to exclude from the term "meeting" only those parts of collective bargaining sessions that relate specifically to "strategy or negotiations," rather than to collective bargaining proceedings in their entirety. We

judicial decision overturning or modifying a decision of the commission. . . ."

General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

[5] Although the board was named as a defendant in the union's appeal to the trial court, the board has supported the position of the union throughout this litigation.

[6] Each petition for certification to appeal was granted, limited to the following issue: "Did the Appellate Court properly conclude that the grievance hearings in this case did not constitute 'meetings' within the meaning of General Statutes § 1-18a (b) because they constituted 'strategy or negotiations' within the meaning of the same statute?" *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 239 Conn. 930, 683 A.2d 399 (1996).

arrived at this construction in light of the long-standing legislative policy of the Freedom of Information Act favoring "the open conduct of government and free public access to government records." (Internal quotation marks omitted.) Id., 712; see *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 166, 635 A.2d 783 (1993); *Board of Education* v. *Freedom of Information Commission*, 208 Conn. 442, 450, 545 A.2d 1064 (1988); *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 328, 435 A.2d 353 (1980). We consistently have held that this policy requires us to construe the provisions of the Freedom of Information Act to favor disclosure and to read narrowly that act's exceptions to disclosure. See, e.g., *Gifford* v. *Freedom of Information Commission*, 227 Conn. 641, 651, 631 A.2d 252 (1993); *Superintendent of Police* v. *Freedom of Information Commission*, 222 Conn. 621, 626, 609 A.2d 998 (1992).

The question before us, therefore, is whether grievance hearings, in their entirety, are properly to be characterized as "strategy" or "negotiation" sessions. This question is not answered in the affirmative simply because grievance procedures arise out of, and relate to, collective bargaining. In other words, to establish the applicability of the exclusion, it is necessary, but not sufficient, that the duty to bargain in good faith that is imposed by our labor law "is an ongoing duty that continues after initial contract negotiations are over . . . [and] includes the duty to negotiate any question arising under an existing contract." (Citations omitted; internal quotation marks omitted.) *Board of Education* v. *State Board of Labor Relations*, 217 Conn. 110, 120–21, 584 A.2d 1172 (1991); see General Statutes § 10-153e (d) (defining on-going duty to negotiate in good faith).

To determine whether grievance hearings qualify as "strategy or negotiations with respect to collective bar-

gaining," we must begin with a description of the operational characteristics of such hearings as documented in the administrative record. Cf. *Glastonbury Education Assn.* v. *Freedom of Information Commission,* supra, 234 Conn. 714–18. In the present case, the principal evidence regarding the conduct of the grievance hearing, apart from the contractual description of the grievance process,[7] was the testimony of John Cronan, the president of the union. His testimony indicated that the

[7] Article 23, § 2, of the collective bargaining agreement sets forth the grievance procedure to be followed: "STAGE 1. (INFORMAL)—[T]he employee and a [union] representative (if the employee so desires) shall discuss the grievance informally with the school official serving as the employee's immediate administrative superior.

"While the aforementioned discussion is mandatory, it shall have no effect on the running of the time limit of thirty (30) school days set forth in Stage 2, Level 1, below, within which a written grievance must be submitted to the employee's immediate administrative superior. Therefore, in the event it becomes apparent to the employee that the aforementioned discussion will not be held or completed within said thirty (30) day period, it is incumbent upon the employee to submit the written grievance to his immediate administrative superior in accordance with the provisions of Stage 2, Level 1, below.

"STAGE 2. (FORMAL)

"LEVEL 1. In the event a grievance is not satisfactorily resolved as a result of the informal discussion held pursuant to Stage 1 above, the employee shall reduce the grievance to writing, setting forth a statement as to the grounds for the grievance and the Article and Section of this Agreement alleged to have been violated, and shall, within thirty (30) school days after the occurrence giving rise to the grievance, submit the written grievance to his immediate administrative superior. The immediate administrative superior may request another meeting to discuss the grievance with the employee and a [union] representative, which they must attend, but in any event must answer the grievance in writing with copies to the employee and the [union] within five (5) school days following receipt of the written grievance.

"LEVEL 2. In the event the grievance is not satisfactorily resolved as a result of the submission required by Level 1 above, the employee, by himself or through the [union], may appeal the decision rendered on the grievance by his immediate administrative superior to the Superintendent provided said appeal is received by the Superintendent within five (5) school days following the date upon which the employee's immediate administrative superior answered the grievance. Within five (5) school days following timely receipt of an appeal filed pursuant to this Level 2, the Superintendent and/

grievance process involves two stages, the presentation of evidence to demonstrate the violation of a provision in the collective bargaining agreement and the request for a remedy to correct the alleged violation. With respect to the remedy, he testified that the parties "bargain back and forth" and often resolve the grievance through a new interpretation of the collective bargaining agreement. That new interpretation may result in the execution of new memoranda of understanding that may become part of present or future collective bargaining agreements. In assessing this evidence, the commission concluded that the parties at the grievance sessions had "discussed matters other than strategy or negotiation with respect to collective bargaining, and

or his representative shall meet with the employee, a [union] representative, and witnesses, if any, for the employee and/or the Board, for the purpose of hearing the appeal and shall within seven (7) school days following the date upon which said meeting is held, render his decision in writing, sending copies to the employee and the [union].

"LEVEL 3. In the event the grievance is not satisfactorily resolved as a result of the decision rendered by the Superintendent in Level 2 above, the employee, by himself or through the [union], may appeal said decision to the Board, provided said appeal shall be filed with the Clerk of the Board in writing, setting forth the basis for the appeal, within five (5) school days following the receipt of the Superintendent's decision. Within twenty-four (24) school days after receipt of a timely appeal made pursuant to this Level 3, the Board shall cause a hearing to be held with the employee, the [union], and witnesses, if any, for the employee and/or the Board, with respect to said appeal and shall, within five (5) school days following [the] hearing, render a decision in writing with copies to the employee and the [union].

"LEVEL 4. In the event the grievance is not resolved as a result of the procedures of Level 3 above, the [union] may submit the grievance to binding arbitration in accordance with the Voluntary Rules of Labor Arbitration of the American Arbitration Association and subject to the limitations of Statute, including the Connecticut Arbitration Statutes; provided that the grievance is submitted to the AAA in writing by registered mail, return receipt requested and postage prepaid, no later than ten (10) school days following the receipt of the Board's decision pursuant to Level 3 above or the expiration of the time limits for making such decision, whichever shall occur first. Copies of the Demand for Arbitration sent to the AAA must also be sent to the Superintendent and to the Board.

"Fees and expenses of the Arbitrator shall be borne equally by both parties."

[had done] so *clearly when receiving testimony and evidence from witnesses.*" (Emphasis added.) With respect to discussions between the parties on the subject of remedies or settlements of grievances, however, the commission made no express finding and stated no express conclusion.

The parties draw different inferences from this administrative record. The union argues that, despite the administrative finding, grievance sessions must be entirely closed because they constitute contract negotiations that, pursuant to § 1-18a (b), are exempt from the open meeting requirement. The individual complainants and the newspaper argue that, despite the administrative evidence regarding the effect of grievance settlements on the interpretation of the collective bargaining agreement, grievance sessions must be entirely open because their agenda is unrelated to negotiations or strategy with respect to collective bargaining.[8] The commission, in its brief, and more clearly at oral argument, has taken an intermediate position. It argues that, under §§ 1-18a (b) and 1-21, the public is guaranteed access to the evidentiary portions of a grievance hearing, but not to those portions of the hearing wherein the parties discuss remedies and settlements. We agree with the commission.

As the commission urges, we hold that § 1-18a (b) must be construed to contemplate a bifurcated grievance hearing. Grievance hearings are meetings that must be open to the public during the presentation of evidence regarding the underlying facts allegedly giving

---

[8] Without citation to supporting evidence in the record, these parties assert that "[a]t no step in this grievance adjustment process was the collective bargaining agreement subject to 'reopening' for future negotiation of the terms or conditions specified in that agreement." Cronan testified, to the contrary, that memoranda of understanding about a collective bargaining agreement may become attached to an existing contract or become part of the next contract.

rise to the grievance, but they may be closed to the public, in the absence of a waiver, during negotiations regarding appropriate remedies or settlements. Such a construction of § 1-18a (b) invokes, by analogy, the parallel provisions of § 1-18a (e) (2),[9] pursuant to which a public agency may adjourn a meeting to go into executive session for "strategy and negotiations with respect to pending claims or pending litigation to which the public agency . . . is a party." Indeed, in similar circumstances arising under § 1-18a (e) (1),[10] we have expressly required a public hearing during the evidentiary portions of hearings held to evaluate the job performance of a public employee, while at the same time recognizing that the public agency may deliberate in private about the conclusions to be drawn from such evidence. *Board of Police Commissioners* v. *Freedom of Information Commission*, 192 Conn. 183, 190, 470 A.2d 1209 (1984) (Freedom of Information Act must be construed to mandate that "hearing" portion of administrative proceeding be open to public). The same logic applies here.

Although the scope of the administrative order at issue in this case is not free from ambiguity, a fair reading of that order indicates that the union and the board, in future grievance proceedings, must comply with the requirements of § 1-21 by providing notice and by allowing public access with respect to those portions

[9] General Statutes § 1-18a (e) provides in relevant part: " 'Executive sessions' means a meeting of a public agency at which the public is excluded for [purposes of] . . . (2) strategy and negotiations with respect to pending claims or pending litigation to which the public agency or a member thereof, because of his conduct as a member of such agency, is a party until such litigation or claim has been finally adjudicated or otherwise settled . . . ."

[10] General Statutes § 1-18a (e) provides in relevant part: " 'Executive sessions' means a meeting of a public agency at which the public is excluded for [purposes of]: (1) Discussion concerning the appointment, employment, performance, evaluation, health or dismissal of a public officer or employee . . . ."

of the hearing that involve "receiving testimony and evidence from witnesses." As we have construed the statute, that order was appropriate and should have been upheld.

The judgments of the Appellate Court are reversed and the cases are remanded to that court with direction that they be remanded to the trial court with direction to dismiss the appeals from the orders of the commission.

In this opinion the other justices concurred.