MORTON J. DOWNEY, SR. *v.* RETIREMENT BOARD
OF THE CITY OF WATERBURY ET AL.
(AC 20614)

Lavery, C. J., and Spear and Flynn, Js.

Argued April 4---officially released October 9, 2001

*Linda S. Tableman*, for the appellant (plaintiff).

*Paula N. Anthony*, for the appellees (defendants).

*Opinion*

LAVERY, C. J. The plaintiff, Morton J. Downey, Sr., appeals from the judgment rendered by the trial court in favor of the defendants[1] denying the plaintiff's request for a recalculation and increase of his disability pension. The plaintiff contends that the court improperly found that the disability pension was equitable. We agree and reverse the judgment of the trial court.

The following are the relevant facts and procedural history. The plaintiff began working for the Waterbury fire department in September, 1953. In July, 1982, the plaintiff applied for a voluntary disability pension on the basis of the medical diagnosis that he was suffering from heart disease. On September 29, 1982, the defendant Waterbury retirement board (board) granted the plaintiff's application, awarding him a 76 percent disability pension. The plaintiff received workers' compensation benefits until January, 1988, for a 35 percent permanent partial disability of the heart.

In 1987, a physical examination revealed that the plaintiff did not have heart disease and that he was

---

[1] The defendants are the retirement board of the city of Waterbury and its individual members, Chairman Pasquale A. Mangini, Alderman Nicholas Augelli, Commissioner David Bozzuto, Commissioner Genevieve Cavallerano and Commissioner Joseph Cronin.

able to return to work. Thereafter, in March, 1987, the plaintiff applied to the board to be reinstated as a firefighter for the Waterbury fire department and to be removed from the disability pension roll. The board refused to reinstate the plaintiff, and the plaintiff brought an action in the Superior Court. After a trial, the court ordered that the plaintiff be reinstated. The board failed to reinstate the plaintiff, and the matter ultimately came before the commission on human rights and opportunities (commission). The commission determined that the defendants' refusal to reinstate the plaintiff was illegal discrimination. In addition, the commission ordered the defendants to reinstate the plaintiff with full benefits and vested pension credits retroactive to April 11, 1988, and to pay him damages, back pay and attorney's fees.[2]

The fire department reinstated the plaintiff on February 17, 1993. In April, 1995, the plaintiff applied for disability retirement, citing injuries from a January, 1977 fire engine accident. Subsequently, on May 12, 1995, the plaintiff injured his back and knees while fighting a house fire. On June 14, 1995, the board announced that the plaintiff would receive a disability pension based on 62 percent of his salary. The board arrived at this figure using thirty-one years of service as one of the factors to determine the plaintiff's disability pension award. In November, 1996, the plaintiff filed an application with the board to review and increase the amount of his disability pension award in light of the commission's order to give the plaintiff credit for the nearly five years of vested pension credit that he would have received if he had been reinstated on April 11, 1988. The board denied the plaintiff's application, and the plaintiff appealed to the Superior Court.

---

[2] See also *Downey* v. *Retirement Board*, 22 Conn. App. 172, 174–75, 576 A.2d 582, cert. denied, 216 Conn. 812, 580 A.2d 65 (1990).

At trial, the plaintiff submitted evidence that the board had been presented with evidence of his years of service, medical reports by the board's impartial medical examiners and the applicable collective bargaining agreements. The plaintiff also presented the court with evidence that the board had credited him with only thirty-one years of service in contravention of the commission's order. Nevertheless, the court found that the board's refusal to reinstate the five years of pension credit was not unreasonable, arbitrary, illegal or an abuse of its discretion and it dismissed the appeal.[3] This appeal followed. Additional facts will be provided as necessary.

I

The plaintiff first claims that the court improperly found that the disability pension awarded to him was equitable when the board did not credit all of the plaintiff's years of service, including imputed service from April 11, 1988,[4] until his reinstatement on February 17, 1993. We agree with the plaintiff and reverse the judgment of the trial court.

The applicable standard of review when a trial court upholds a decision of an administrative agency is well

---

[3] The trial court concluded: "The court has reviewed the return of record . . . briefs, testimony and arguments of counsel and finds that the board did not act unreasonably, arbitrarily, illegally or in abuse of its discretion.

"At its meeting of June 14, 1995, the board had before it all relevant information to determine an equitable disability pension for the plaintiff. Thereafter, the board allowed the plaintiff and his counsel at several meetings to provide the board with additional information claiming other proceedings between the board and the plaintiff [were] relevant and material to support a higher pension. The board reviewed the material and concluded that [its] original decision was equitable.

"Since the plaintiff requested a disability pension, that is what the board considered. His claim for a higher pension based upon years of service and additional injuries is of no avail."

[4] On April 11, 1988, the Superior Court ordered that the plaintiff be reinstated. The plaintiff was not reinstated until February 17, 1993.

settled. "Where the administrative agency has made a factual determination, the scope of review ordinarily is expressed in such terms as substantial evidence or sufficient evidence. . . . Where, however, the administrative agency has made a legal determination, the scope of review ordinarily is plenary." (Citation omitted.) *Christian Activities Council, Congregational* v. *Town Council*, 249 Conn. 566, 581, 735 A.2d 231 (1999). "Pursuant to our standard of review, we examine whether the conclusions of law reached by the trial court resulted from a correct application of the law to the facts of this case." *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 42 Conn. App. 700, 705, 682 A.2d 125 (1996), rev'd on other grounds, 240 Conn. 835, 694 A.2d 1241 (1997); see also *Alexander* v. *Retirement Board*, 57 Conn. App. 751, 758, 750 A.2d 1139, cert. denied, 254 Conn. 902, 755 A.2d 217 (2000).

The plaintiff claims on appeal that the board failed to give proper credit for his years served. Section 2724 of the charter of the city of Waterbury provides in relevant part that "[a] pension shall be paid to each officer participant who has been retired under this act for life calculated upon the formula used to calculate pensions for participants of the department of which he was a member. . . ." The union contract between the city of Waterbury and its firefighters union, article XXXIII, § 9, sets forth that a firefighter's pension shall be calculated using 2 percent for each year of service. The record shows that the factors that the board took into account when it arrived at the amount of pension to award were the plaintiff's years of service, his medical records and the applicable collective bargaining agreements.[5] It failed, however, to credit fully the plaintiff's years of

---

[5] Article XXXIII, § 9, of the union contract also provides: "Effective July 1, 1986, the amount of pension, or pension entitlement, in terms of the amount of pension dollars shall be the product of (A) (that is, the percentage factor), multiplied by (B) (that is, the annual pay factor). In this formula, (A) equals the percentage which is determined by multiplying the number of years of service by two percent (2%) for each year of service and (B) is

service.[6] Because the board ignored a clear directive from the commission to credit the plaintiff for the years in which it illegally discriminated against him, the board

the annual pay which shall be computed on the basis of the employee's weekly base salary, prescribed in Article XXVI hereof, (which is in effect as of the date that the employee filed the said application for service retirement), multiplied by fifty-two (52) weeks plus the appropriate longevity amount as prescribed in Article XXI hereof, to which the said employee is entitled as of the date of the filing of his application for retirement, plus twenty-five percent (25%) of the Article XI, Section 5 terminal leave pay, plus, if applicable to a given employee, the Article XXVII, Section 1a, Regular Fire Drivers pay. Also included in (B) shall be the total of any overtime payments prescribed in Article XVIII, plus Article XXIII Holiday payments, plus any Article XXIV Fire Watch Duty payments, during the last twelve (12) consecutive months within the last thirty-six (36) month period prior to the filing of said application for retirement."

[6] In addition, the board's argument that the fire department's union contract requires an annual contribution to be eligible for pension benefits is unavailing. Although the contract does set forth a formula for what percentage of the salary the contribution will be and how it will be collected, it does not state any position on the consequence of not contributing to the plan. The city of Waterbury charter is silent on the issue of contributions to be made to the pension plan when an employee is receiving disability pension and is then reinstated. The record indicates that the city's practice, consistent with that of other state retirement and disability policies, has been not to require contributions during a period of disability but to credit such period for purposes of retirement as though contributions had been made.

Our state legislature also has articulated a policy for awarding credit for the years a state employee is disabled. General Statutes § 5-169 (e) expressly provides that "[r]etirement income being paid for disability retirement shall end when and if the disability ends. In such event, such member shall receive credit for the years he was disabled . . . ." General Statutes § 5-169 (i) provides in relevant part: "If a member qualifies for disability compensation under section 5-142, such member shall continue to be credited with service hereunder, and shall not be deemed to have retired until he elects to retire. . . ." Moreover, in 1985, the legislature specifically deleted a provision that required qualified employees to continue to make employee contributions for years of service credit.

Furthermore, neither the union contract nor the charter makes any provisions for contributions to the pension plan when the employee is receiving disability pay. On September 20, 1995, the board indicated that the reason that it was crediting only the thirty-one years of service was because the plaintiff had not made contributions to the plan from April 11, 1988, to February 17, 1993. On May 29, 1996, the plaintiff indicated that he was

abused its discretion. Thus, we conclude that the trial court should not have upheld the board's decision to reduce years of service based on the plaintiff's disability because the commission specifically ordered the board to credit the plaintiff with the years of service from 1988 to 1993.

The decision of the commission specifically reinstated the plaintiff "retroactive to April 11, 1988, with full benefits and pension vested credits from that date." A decision of the commission aims to address impermissible discrimination. See General Statutes § 46a-51 et seq. "[T]he victim of a discriminatory practice is to be accorded his rightful place in the employment scheme, that is, he has a right to be restored to the position he would have attained absent the unlawful discrimination. . . . Where prohibited discrimination is involved, the hearing officer has not merely the power but the duty to render a decree which will, so far as possible, eliminate the discriminatory effects of the past as well as bar like discrimination in the future." (Citation omitted; internal quotation marks omitted.) *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 478, 559 A.2d 1120 (1989).

"It is the [commission] that is charged with the primary responsibility of determining whether discriminatory practices have occurred and what the appropriate remedy for such discrimination must be." *Dept. of Health Services* v. *Commission on Human Rights & Opportunities*, 198 Conn. 479, 488, 503 A.2d 1151 (1986). Here, the decision of the commission "to reinstate [the plaintiff] retroactive to April 11, 1988, with full benefits and pension vested credits from that date," was the remedy intended to eliminate the discriminatory effects

willing to make contributions to the plan for the five years in question, and the board refused to consider this offer. This offer, however, was unnecessary because the commission reinstated him with full vested pension rights.

of the defendants' illegal discrimination against the plaintiff. The plaintiff's evidence was sufficient to demonstrate that the defendants failed to credit the years of service that the commission ordered. The board did not appeal from the decision of the commission and it may not now seek to circumvent the unequivocal order of the hearing officer. The proper venue to demonstrate any disagreement with a decision of the commission is the appeal process, not by disregarding such orders under the guise of administrative discretion. Accordingly, we reverse the decision of the trial court and remand the case for a recalculation of the plaintiff's pension benefits using thirty-six years of service to calculate the plaintiff's pension.

## II

The plaintiff next claims that the court improperly found that the disability pension awarded to him was equitable when it did not include any award for the plaintiff's separate injuries and resulting disabilities.

The plaintiff maintains that a disability pension must be based on the amount that the firefighter would have received had he applied for a service pension and that the retirement board must decide what additional amount should be added to that base amount to compensate the firefighter for his disability. The defendants argue that in the case of a disability pension, unlike a service pension, there is no set formula based on years of service and years of service is only one of the factors to be considered. They maintain that a disability pension can include an award for the disability and still properly be an amount that is less than the disabled firefighter would have been entitled to if he had applied for a service pension. We agree with the plaintiff and remand the case for a determination of whether to increase the plaintiff's pension award in light of the plaintiff's disabilities.

Disability pay is a form of pension. *Carilli* v. *Pension Commission*, 154 Conn. 1, 7, 220 A.2d 439 (1966). Furthermore, the inherently dangerous nature of a firefighter's work is well established. See *Grover* v. *Manchester*, 168 Conn. 84, 89, 357 A.2d 922 ("no other municipal employees are called out from the security of their homes to ensure the security of the homes of others"), appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26 (1975); *Stratford* v. *Local 134, IFPTE*, 201 Conn. 577, 588, 519 A.2d 1 (1986) (firefighters employed in extra risk occupations that justify statutory entitlement to special bonus of certain disability benefits). The defendants' interpretation of the contract and the charter would lead to the anomalous result of having the amount of pension reduced because a firefighter was disabled on the job. The plaintiff is entitled to his vested pension based on his years of service, and the plaintiff's disability, if proven, would necessitate an increase in his pension, not the reduction proposed by defendants.

In *Battaglia* v. *Waterbury Retirement Board*, Superior Court, judicial district of Waterbury, Docket No. 123090 (June 5, 1995), the plaintiff, a Waterbury firefighter, appealed from the decision of the Waterbury board of retirement that awarded him a disability pension. The decision in that case supports the plaintiff's argument here that he should receive at least some additional pension because of his disability. In *Battaglia*, the trial court upheld a decision of this same board that awarded only a 2 percent *increase* in a firefighter's retirement pay because of his disability.[7] The plaintiff argued that the disability award of 2 percent was minimal based on the medical evidence presented to the

---

[7] The trial court in *Battaglia* stated: "The fact that Mr. Battaglia received only 2 percent more under a disability retirement than he would have received under normal retirement on the same date does not persuade this court that the board's assessment of his disability pension was arbitrary, clearly erroneous, or an abuse of discretion."

board. The firefighter in *Battaglia* had an initial disability award above and beyond his normal retirement pension, and his position was that the amount of the award was too small based on the extent of his disability. The *Battaglia* court held that the board has discretion to determine what percentage over and above a normal retirement pension a disability warrants. *Battaglia* offers no guidance for a situation such as in the present case in which a firefighter is denied any additional pension. Indeed, *Battaglia* merely proposes that, when a board awards an amount for disability that is over and above what would have been awarded at normal retirement, the board has the discretion to determine what the increased percentage will be. Here, the board failed to award *any* additional amount for disability pension despite the medical testimony regarding the plaintiff's disability. Just as it is not within the board's discretion to reduce years of service for the plaintiff's disability, the board may not ignore the plaintiff's medical reports, physical condition and disability when determining the plaintiff's pension award.

The plaintiff was examined by two independent physicians at the request of the board pursuant to § 2746 of the Waterbury city charter.[8] The two independent

---

[8] Section 2746 of the city charter provides in relevant part: "Any fire or police participant totally and permanently disabled during the performance of essential duties pertaining to his employment by the City of Waterbury, irrespective of the duration of his employment, [shall] be retired for disability, provided proof of total disability is submitted to the retirement board substantiated by reports of examinations to be made by at least two (2) impartial competent medical examiners appointed by the legal department and retirement board. The retirement board shall pay to each regular member employed in the fire or police department who has been retired for disability according to the provisions of this act, this chapter of the compilation, a pension during the continuance of such disability. In the event that the board shall, upon competent medical evidence, conclude that the disability for which the employee is receiving a pension no longer exists, the board shall thereupon order a discontinuance of the pension payable to such employee, but not until such employee has been offered reinstatement in the same or comparable employment. . . ."

physicians found that the plaintiff was totally and permanently disabled from performing the duties of his occupation as a result of injuries he sustained in 1977. This finding did not even include the injuries that the plaintiff received in a fire in May, 1995, subsequent to his application for disability retirement. In June, 1995, when the board awarded the plaintiff a 62 percent pension, the plaintiff filed a motion for reconsideration, which was denied.

Our legislature has created specific statutes that reflect this state's policy regarding disability pensions for firefighters. General Statutes § 7-433c creates survivor benefits for police or firefighters disabled or deceased as a result of hypertension or heart disease. That statute provides for *additional* disability compensation for firefighters who suffer from hypertension or heart disease. Although the plaintiff does not seek a disability pension pursuant to that statute, § 7-433c demonstrates a clear policy of creating additional benefits for certain classes of disabled municipal employees. See *Felia* v. *Westport*, 214 Conn. 181, 184, 571 A.2d 89 (1990); see also *Carriero* v. *Naugatuck*, 243 Conn. 747, 754, 707 A.2d 706 (1998); *Szudora* v. *Fairfield*, 214 Conn. 552, 555, 573 A.2d 1 (1990). It is incongruous specifically to increase a firefighter's pension for heart and hypertension disability, but to reduce a firefighter's pension when the disability arises from falling through a burning staircase, an accident in a fire engine or other job related injuries.

It appears that the board and the trial court both operated under the impression that a disability pension should be the same as, or less than, a service pension, and that it was therefore proper for the plaintiff's pension to be based on his years of service and not on his physical disability. The record supports the conclusion that the board made its award based solely on the plain-

tiff's years of service.[9] The record reflects that the board based its decision on thirty-one years of service and that the medical opinion of the two independent physicians appointed by the board either was not considered or was disbelieved. "While we recognize that an adminis-

[9] The following colloquy transpired at the board's meeting concerning the plaintiff's application:

"Commissioner David Bozzuto: And the disability pension is currently 62 percent [and] is based on his actual years of having worked for the city.

"Administrator Brustat: That is correct.

"Commissioner Bozzuto: So, the changes I understand it, that is being requested is to increase his time for the years or the five years that he did not actually work for the city.

"Administrator Brustat: Correct.

"Chairman Pasquale A. Mangini: I might also point out commissioner that your observations are correct, the 62 percent was both arrived at and the conclusion based on service retirement and disability retirement. It happened to be 62 percent is the equivalent of the years of service. Isn't that so?

"Administrator Brustat: Correct.

"Chairman Mangini: So that it was a common point arrived at by the board, who was sitting on the board at that time, as an equitable disability retirement. It is my understanding.

"Commissioner Bozzuto: What year was that?

"Administrator Brustat: 1995, June 16th.

"Chairman Mangini: Some of these commissioners were seated at the board at that time, so you are familiar [with] what transpired. Any further discussion on the motion.

"Mr. Downey: I would like to speak.

✻ ✻ ✻

"Chairman Mangini: Go ahead Mr. Downey.

"Mr. Downey: On the rate of disability, I retired in 1995, I did not get the rate of disability until 1997 from the doctors. That was not taken into context in the board meeting before, because I was retired before I had the operations. The doctor waited two years with the legs to see what the disability I got.

"Chairman Mangini: I don't think Mr. Downey that we are saying the board rated you at 62 percent disabled. I think what we are saying is the board rated your disability payment at 62 percent that equated to the same percentile that would have been arrived at based on your years of service. I am not saying that this board established any medical.

"Mr. Downey: I misunderstood; what I am trying to say, is that I did not get a disability rating until 1997.

"Chairman Mangini: But in plain and simple terms, you were given a 62 percent disability and at that time there was thirty-one years of service which would equate to 62 percent service."

trative agency is not required to believe any of the witnesses, including expert witnesses . . . it must not disregard the only expert evidence available on the issue when the commission members lack their own expertise or knowledge." (Citation omitted.) *Tanner* v. *Conservation Commission*, 15 Conn. App. 336, 341, 544 A.2d 258 (1988); see also *Feinson* v. *Conservation Commission*, 180 Conn. 421, 429, 429 A.2d 910 (1980).

There would, however, be no need for a disability award if it was to be based on length of service. Disability pensions for firefighters and police injured on the job are provided for in the charter and referred to in the contract between the city of Waterbury and Waterbury Firefighters Association, Local 1339.[10] We, therefore, conclude that the court's decision to uphold the board's apparent failure to include any award for the plaintiff's disability was incorrect.

### III

The plaintiff's final claim is that the trial court improperly excluded evidence that showed that the board abused its discretion when it failed to consider all of the plaintiff's years of service and to award a percentage of disability over and above the plaintiff's years of service. We do not address this claim, however, because we agree with the plaintiff's first two claims, which are dispositive of the appeal.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the appeal and remanding the case to the board with direction to award the plaintiff the correct number of years of scr-

---

[10] Article XXXIII, § 11, of the contract provides in relevant part: "The parties hereto agree that, effective as of July 1, 1977, any provision of the Charter to the contrary notwithstanding, an employee who applies for, and receives, a disability pension . . . . shall be entitled to, and shall receive, a maximum disability pension of seventy-six percent (76%) of annual pay. . . ." See also footnote 8.

vice and to order a new hearing on the plaintiff's disability application. At that hearing, the board shall consider the medical evidence, not only of the plaintiff's injuries sustained in the line of duty in 1977, but also of those injuries sustained in the line of duty in May, 1995, and the amount of disability that resulted therefrom, if any.

In this opinion the other judges concurred.