JOHN P. COSGROVE *v.* CITY OF WATERBURY ET AL.
(SC 17999)

Rogers, C. J., and Norcott, Palmer, Zarella and Schaller, Js.

Argued January 2—officially released May 13, 2008

*Francis J. Grady*, with whom were *Nancy Monaco-Marini* and, on the brief, *Bridget McCormack Ciarlo*, for the appellant (plaintiff).

*Paula N. Anthony*, for the appellees (defendants).

*Opinion*

NORCOTT, J. The plaintiff, John P. Cosgrove, a former police officer of the defendant city of Waterbury (city), appeals[1] from the judgment of the trial court dismissing his appeal from the decision of the defendant retirement board of the city (board), which awarded him a disability pension in the amount of 75 percent of his annual compensation. On appeal, the plaintiff claims that the trial court improperly dismissed his appeal from the decision of the board because: (1) both a

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

"common sense interpretation" of the controlling collective bargaining agreement and the Appellate Court decision in *Downey* v. *Retirement Board*, 66 Conn. App. 105, 783 A.2d 1218 (2001), required that the board award him some amount greater than 75 percent of his compensation, since he would have been entitled to a vested years of service pension (service pension) in the same amount; (2) the board violated the Municipal Employees Relations Act, General Statutes § 7-460 et seq., by relying on a 2003 city ordinance when determining the amount of disability pension to be awarded; and (3) the board improperly failed to consider the medical evidence in the record when determining the amount of his disability pension. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The plaintiff was hired by the city as a police officer on March 25, 1974. As a city police officer, the plaintiff also was a member of the Waterbury Police Union, Local 1237, Council 15, American Federation of State, County and Municipal Employees, AFL-CIO (union). During his years of service with the city, the plaintiff was promoted to the rank of police lieutenant. On February 27, 2004, the plaintiff submitted to the board an application for a disability pension (application), claiming that he had suffered a work-related back injury on November 26, 1986, as well as work-related hearing loss.[2]

It is undisputed that, at the time the plaintiff's application was submitted to the board, the terms and conditions of the plaintiff's employment were governed by a

---

[2] The plaintiff claims that his hearing loss was attributable to noise exposure at the police shooting range, where he served as an instructor over the course of twenty-five years.

collective bargaining agreement (agreement)[3] between the union and the city. The requirements and procedures regarding the award of disability pensions were governed by article twenty-three, § 12, of the agreement,[4] which conditioned the award of a disability pension on the plaintiff submitting proof to the board that he suffered from a total and permanent disability, and that the plaintiff's disability be substantiated by at least two reports conducted by impartial, competent medical examiners appointed by the board.

At the request of the board, pursuant to article twenty-three, § 12, of the agreement, Richard H. Dyer and Richard E. Loyer, two physicians appointed by the board, performed independent medical examinations of the plaintiff's injuries. Each physician submitted to the board a completed retirement disability questionnaire, as well as a cover letter describing their evaluations in more detail. Dyer and Loyer both determined

---

[3] The agreement was entitled: "2000–2005 Agreement Between the City of Waterbury, Connecticut and the Waterbury Police Union, Local 1237, Council 15, American Federation of State, County and Municipal Employees, AFL-CIO."

[4] Article twenty-three, § 12, of the agreement provides in relevant part: "Any police participant totally and permanently disabled during the performance of essential duties pertaining to his employment by the City of Waterbury, irrespective of duration of his employment, shall upon application in a form prescribed by the Retirement Board, be retired for disability, provided proof of total disability is submitted to the Retirement Board substantiated: by reports of examinations to be made by at least two (2) impartial competent medical examiners appointed by the Retirement Board.

"The Retirement Board shall pay to each regular member employed in the Police Department who has been retired for disability according to the provisions of this Article or Section, a pension during the continuance of such disability. . . . The City of Waterbury guarantees that effective upon signing of this contract no pension payable to a police participant . . . on account of total and permanent disability sustained during the performance of essential duties pertaining to employment by the City of Waterbury as provided herein, shall be less than one-half (1/2) the annual rate of regular compensation, plus longevity of the disabled employee at the time of retirement. It is specifically understood that any employee who is disabled for a period of twelve months may be retired at the city's discretion."

that the plaintiff is totally and permanently disabled from his occupation as a police officer, but concluded that he could engage in other, less strenuous, employment.

The board considered the plaintiff's application at its meeting on June 10, 2004. At the meeting, the plaintiff's attorney described his injuries and the conclusions proffered in the independent medical examinations. The plaintiff's attorney then requested that the plaintiff be awarded a disability pension in the amount of 80 percent of his regular compensation—specifically, 75 percent for what he would have been entitled to for a service pension, under article twenty-three, § 4, of the agreement,[5] and an additional 5 percent as compensation for his back disability and hearing loss. Thereafter, a board member made the following motion: "After a review of the independent medical examinations and after review of your . . . police contract, I make a motion to approve a disability pension in the amount of $49,591.80 for [the plaintiff]." The board then unanimously approved the plaintiff's disability pension in the amount of $49,591.80,[6] which constituted the same

[5] Article twenty-three, § 4, of the agreement provides in relevant part: "Any police participant who satisfies the eligibility requirement of Section 3 hereof (that is, who has served as a member of the Police Department for at least fifteen [15] years and who has completed twenty [20] years of service with the City, regardless of age,) shall be entitled to an annual pension for life in an amount equal to one-half of the amount of compensation (as heretofore defined in Section 2, sub-paragraph 6 hereof) received by him, at the permanent rank or grade held by him at the time of his retirement, payable monthly. In the case of any police participant, eligible for retirement at his option, who shall continue in the service of the Police Department after the said date of eligibility for retirement, there shall be added to such pension, at the time of his permanent retirement, a sum equal to two and one-half (2.5%) percent of his said compensation, for each additional completed year he continues in said service until the date of his permanent retirement. . . ."

[6] The plaintiff's pension subsequently was recalculated to reflect his correct pay rate at the time of his retirement, which resulted in an annual disability pension in the amount of $51,066.

amount that the plaintiff would have been entitled to receive under a service pension, namely, 75 percent of his annual compensation at the time of his retirement.[7]

The plaintiff appealed from the decision of the board to the trial court. On appeal to the trial court, the plaintiff asserted that the board's decision to award him a disability pension in the same amount that he would have been entitled to receive under a service pension was illegal, arbitrary and an abuse of discretion. Specifically, the plaintiff claimed, inter alia, that the board was required, under the Appellate Court decision in *Downey* v. *Retirement Board*, supra, 66 Conn. App. 105, to award the plaintiff a disability pension in an amount greater than he was entitled to receive under a service pension. The plaintiff also claimed that the board improperly relied on a 2003 city ordinance in calculating the amount of his disability pension.

The trial court concluded that the board had properly calculated the plaintiff's disability pension in accordance with article twenty-three, § 12, of the agreement. Specifically, the trial court determined that the plaintiff's pension award of 75 percent was proper because it exceeded the contractual minimum that the board was required to provide under § 12, namely, 50 percent of the plaintiff's annual compensation at the time of his retirement. The trial court also concluded that the Appellate Court decision in *Downey* is distinguishable from the present case in several respects,[8] and, there-

---

[7] For purposes of clarity, any reference to the term "compensation" or "annual compensation," in regard to what the plaintiff is entitled to under article twenty-three, § 12, of the agreement, includes the "longevity payment" owed to the plaintiff under article five of the agreement. Because the plaintiff was credited with thirty years of service as a city police officer, he is entitled to an annual longevity payment, under article five, § 1, of the agreement, in the amount of $930.

[8] The trial court concluded that, unlike in *Downey*, in the present case: (1) the board does not argue that the plaintiff should receive a lesser amount than he was entitled to under a service pension; (2) the medical evidence in the record, concerning the nature and extent of the plaintiff's disabilities,

fore, is not controlling in this case. The trial court interpreted the decision in *Downey* simply to require that a retirement board examine and consider medical evidence in the record, concerning the nature and extent of an applicant's disability, when rendering the award of a disability pension. The trial court concluded that the board had, in fact, reviewed the proffered medical evidence regarding the plaintiff's disabilities before determining that he was entitled to a disability pension award. The trial court also concluded that the plaintiff's claim regarding the board's improper use of the 2003 city ordinance was moot because the board had conceded that the 2003 ordinance in no way controlled the award of a pension to the plaintiff. Thereafter, the trial court dismissed the appeal,[9] and denied the plaintiff's subsequent motion to reargue. This appeal followed.

On appeal, the plaintiff claims that the trial court improperly concluded that the board's decision was not unlawful, arbitrary or an abuse of discretion, and in doing so, he renews substantially the same claims that the trial court had previously rejected. In the companion case of *O'Connor* v. *Waterbury*, 286 Conn. 732, 945 A.2d 936 (2008), we addressed substantially identical claims and concluded that: (1) the board's award was proper with regard to both the board's discretion under the agreement and the provisions of article twenty-three, § 12, of the agreement; (2) there is no evidence in the

was reviewed and considered by the board prior to making its decision regarding the amount of disability pension awarded to the plaintiff; and (3) the provisions of article twenty-three, § 12, in the agreement differ from the contractual provisions in *Downey* that controlled the award of disability pensions therein.

[9] In dismissing the appeal, the trial court also determined that the plaintiff had abandoned several claims, including that the board: (1) was influenced by social and political pressures not evinced in the record; (2) breached a fiduciary duty to the plaintiff; and (3) violated the plaintiff's equal protection and due process rights. The plaintiff has elected not to pursue these claims in this appeal.

record that the board relied on the 2003 city ordinance in determining the amount of the disability pension; (3) the decision in *Downey* v. *Retirement Board*, supra, 66 Conn. App. 105, does not require that the board award a disability pension in an amount that exceeds what the applicant would have been entitled to receive under a service pension; and (4) the board considered the medical evidence in the record when determining whether, and in what amount, to award the plaintiff a disability pension. Accordingly, we similarly reject the plaintiff's claims in this appeal.[10]

The judgment is affirmed.

In this opinion the other justices concurred.

[10] The fact that the plaintiff in the present case and the plaintiff in *O'Connor* received different pension awards, regarding the amount of compensation, has no substantive effect on our conclusion in this case.