SCOTT J. O'CONNOR *v.* CITY OF
WATERBURY ET AL.
(SC 18003)

Rogers, C. J., and Norcott, Palmer, Zarella and Schaller, Js.

Argued January 2—officially released May 13, 2008

*Francis J. Grady*, with whom were *Nancy Monaco-Marini* and, on the brief, *Bridget McCormack Ciarlo*, for the appellant (plaintiff).

*Paula N. Anthony*, for the appellees (defendants).

*Opinion*

NORCOTT, J. The plaintiff, Scott J. O'Connor, a former police officer for the defendant city of Waterbury (city), appeals[1] from the judgment of the trial court dismissing his appeal from the decision of the defendant retirement board of the city (board) awarding him a disability pension in the amount of 57.5 percent of his annual compensation. On appeal, the plaintiff claims that the trial court improperly dismissed his appeal because: (1) both the controlling collective bargaining

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

agreement and the Appellate Court decision in *Downey* v. *Retirement Board*, 66 Conn. App. 105, 783 A.2d 1218 (2001), required the board to award him some amount greater than 57.5 percent of his annual compensation, which is the same amount that he would have been entitled to receive under his vested years of service pension (service pension); (2) the board violated the Municipal Employees Relations Act (MERA), General Statutes § 7-460 et seq., by relying on a 2003 city ordinance when determining the amount of disability pension to be awarded; (3) the board did not consider the medical evidence in the record when determining the amount of his disability pension; and (4) the board should be estopped from awarding him less than a 76 percent disability pension because the board customarily awarded pensions in that amount to compensate for heart or hypertension disabilities. We disagree with these claims, and we affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The plaintiff was hired by the city as a police officer on November 30, 1981. As a city police officer, the plaintiff also was a member of the Waterbury Police Union, Local 1237, Council 15, American Federation of State, County and Municipal Employees, AFL-CIO (union). During his years of service with the city, the plaintiff achieved promotion to the rank of police lieutenant.

On February 27, 2004, the plaintiff submitted a disability pension application (application) to the board,[2] claiming that he had suffered a work-related back injury on July 19, 2002. Thereafter, he submitted a revised application to the board on April 6, 2004. In the applica-

---

[2] The plaintiff claims that he did not voluntarily submit the initial application. Instead, the plaintiff asserts that the application was involuntarily submitted, on his behalf, by the city's chief of police. The plaintiff did, however, sign and date the initial application.

tion, the plaintiff asserted that he had endured several work-related injuries over the course of his employment, which have caused him to suffer from various permanent partial disabilities, including hypertension and three orthopedic disabilities.[3]

At the time the plaintiff's application was submitted to the board, the terms and conditions of his employment were governed by a collective bargaining agreement (agreement) between the union and the city. The requirements and procedures regarding the award of disability pensions were governed by article twenty-three, § 12, of the agreement.[4] That section required the plaintiff to submit proof to the board that he suffered from a total and permanent disability, and that the disability be substantiated by at least two reports conducted by impartial, competent medical examiners appointed by the board.

---

[3] In his revised application, the plaintiff specifically claimed to suffer from: (1) a 13 percent heart and hypertension disability; (2) a 20 percent disability of his right shoulder; (3) a 20 percent disability of his cervical spine; and (4) a 20 percent disability of his right knee. The revised application did not, however, reference the back injury that the plaintiff had claimed in his initial application.

[4] Article twenty-three, § 12, of the agreement provides in relevant part: "Any police participant totally and permanently disabled during the performance of essential duties pertaining to his employment by the City of Waterbury, irrespective of duration of his employment, shall upon application in a form prescribed by the Retirement Board, be retired for disability, provided proof of total disability is submitted to the Retirement Board substantiated: by reports of examinations to be made by at least two (2) impartial competent medical examiners appointed by the Retirement Board.

"The Retirement Board shall pay to each regular member employed in the Police Department who has been retired for disability according to the provisions of this Article or Section, a pension during the continuance of such disability. . . . The City of Waterbury guarantees that effective upon signing of this contract no pension payable to a police participant . . . on account of total and permanent disability sustained during the performance of essential duties pertaining to employment by the City of Waterbury as provided herein, shall be less than one-half (1/2) the annual rate of regular compensation, plus longevity of the disabled employee at the time of retirement. It is specifically understood that any employee who is disabled for a period of twelve months may be retired at the city's discretion."

The board requested that Richard H. Dyer and Richard E. Loyer, two physicians selected by the board, perform independent medical examinations of the plaintiff's orthopedic injuries, and that Dennis Dobkin and James Flint, two physicians also selected by the board, perform independent medical examinations with regard to the hypertension claim. Each physician submitted to the board a completed retirement disability questionnaire, as well as a cover letter describing their evaluations in greater detail. Dyer, Dobkin and Flint each determined that, while the plaintiff is totally and permanently disabled from his occupation as a police officer, he could engage in other less strenuous employment. Loyer determined, however, that the plaintiff not only was totally and permanently disabled from performing the duties of a police officer, but also that his injuries would preclude him from engaging in any other gainful employment.

The board considered the plaintiff's application at its meeting on June 10, 2004. At the meeting, the plaintiff's attorney described his injuries and the conclusions proffered in the independent medical examinations. The plaintiff's attorney then requested that the plaintiff be awarded a disability pension in the amount of 79 percent of his regular annual compensation. The plaintiff's attorney conceded that a rate of 79 percent was not required under the terms of the agreement, but claimed that it was warranted because: (1) it was the board's customary practice to award a 76 percent pension for hypertension disability; and (2) the plaintiff's multiple orthopedic injuries justified an additional 3 percent increase in the overall disability pension rate. Thereafter, a board member made the following motion: "After a review of the independent medical examinations, after review of the . . . police contract I make a motion to approve a disability pension of $38,989.60." The board then unanimously approved the plaintiff's

disability pension in the amount of $38,989.60, which is the same amount that he would have been entitled to receive under a service pension pursuant to article twenty-three, § 4, of the agreement, namely, 57.5 percent of his annual compensation at the time of his retirement.[5]

The plaintiff appealed from the decision of the board to the trial court, and claimed that the board's decision to award him a disability pension in the same amount he would have been entitled to receive under a service pension was illegal, arbitrary and an abuse of discretion. Specifically, the plaintiff asserted, inter alia, that the board was required, under *Downey* v. *Retirement Board*, supra, 66 Conn. App. 105, to award him a disability pension in an amount greater than what he was entitled to receive under a service pension. The plaintiff

---

[5] Article twenty-three, § 4, of the agreement provides in relevant part: "Any police participant who satisfies the eligibility requirement of Section 3 hereof (that is, who has served as a member of the Police Department for at least fifteen [15] years and who has completed twenty [20] years of service with the City, regardless of age,) shall be entitled to an annual pension for life in an amount equal to one-half of the amount of compensation (as heretofore defined in Section 2, sub-paragraph 6 hereof) received by him, at the permanent rank or grade held by him at the time of his retirement, payable monthly. In the case of any police participant, eligible for retirement at his option, who shall continue in the service of the Police Department after the said date of eligibility for retirement, there shall be added to such pension, at the time of his permanent retirement, a sum equal to two and one-half (2.5%) percent of his said compensation, for each additional completed year he continues in said service until the date of his permanent retirement. . . ."

Pursuant to article twenty-three, § 4, of the agreement, the plaintiff was entitled to a 57.5 percent years of service pension, based on his twenty-three years of service as a city police officer. Accordingly, using the 2003 rate for the plaintiff's weekly salary—namely, $1230—the plaintiff would have been entitled to receive a service pension in the amount of exactly $38,989.60. Specifically, the plaintiff's total compensation, under § 2 (6) of the agreement, was $67,808, reflecting the sum of: (1) annual pay of $63,960 ($1230 multiplied by 52 weeks); (2) longevity payment of $650; and (3) holiday payment of $3198. The amount of the plaintiff's total compensation would then be multiplied by 57.5 percent, which totals $38,989.60.

also claimed that, since the board did not award him a disability pension in excess of what he was entitled to receive under a service pension, it had disregarded medical evidence in the record concerning the extent of his disabilities. The plaintiff further claimed that, when an applicant is found to suffer from hypertension disability, the board should be estopped from awarding a pension less than 76 percent of that applicant's annual compensation, based on: (1) a proper interpretation of the agreement; (2) General Statutes § 7-433c;[6] and (3) the board's past practice of awarding police officers

---

[6] General Statutes § 7-433c (a) provides in relevant part: "Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. . . ."

and firefighters 76 percent pensions for hypertension disabilities.

The trial court rejected these claims and concluded that the board properly calculated the plaintiff's disability pension in accordance with article twenty-three, § 12, of the agreement. Specifically, the trial court determined that the plaintiff's pension award of 57.5 percent was proper because it exceeded the contractual minimum that the board was required to provide under § 12, namely, 50 percent of the plaintiff's annual compensation at the time of his retirement. The trial court also concluded that the Appellate Court decision in *Downey* v. *Retirement Board*, supra, 66 Conn. App. 105, is distinguishable from the present case in several respects, and that *Downey* does not require a municipal retirement board to award a disability pension in an amount greater than what an applicant would be entitled to receive under a service pension. Instead, the trial court interpreted *Downey* to require only that a retirement board examine and consider medical evidence in the record concerning an applicant's disability, when determining whether to award the applicant a disability pension. The trial court concluded that the board had, in fact, reviewed the proffered medical evidence regarding the plaintiff's disabilities before rendering a disability pension award. Finally, the trial court also rejected the plaintiff's claim that the board should be estopped from awarding less than 76 percent of his annual compensation for his hypertension disability, because he had failed to prove the requisite legal elements for governmental estoppel. Accordingly, the trial court dismissed the plaintiff's appeal.[7] This appeal followed. Additional facts will be set forth as necessary.

---

[7] The trial court also concluded that the board had given the plaintiff sufficient opportunity to be heard at the hearing, and that the plaintiff had abandoned several of his claims, namely, that the board: (1) rendered its decision in a private session outside of the record; (2) was influenced by social and political pressures not evinced in the record; (3) breached a fiduciary duty to the plaintiff; and (4) violated the plaintiff's equal protection

On appeal, the plaintiff renews substantially the same claims that he raised before the trial court. Specifically, he claims that: (1) a "common sense interpretation" of the agreement required the board to award him some amount greater than 57.5 percent of his annual compensation; (2) the board improperly relied on a 2003 city ordinance when determining the amount of disability pension to be awarded in violation of MERA; (3) the Appellate Court decision in *Downey* v. *Retirement Board*, supra, 66 Conn. App. 105, required the board to award him a disability pension in excess of what he was entitled to receive under a service pension; (4) the board improperly failed to consider the medical evidence in the record when rendering the award of his disability pension; and (5) the board should be estopped from awarding him less than a 76 percent disability pension because it customarily awarded pensions in that amount to compensate for heart or hypertension disabilities.

As a preliminary matter, we set forth the appropriate standard of review. The board was created by § 2702 of the Waterbury city code,[8] and § 2703 of the Waterbury city code[9] grants the board powers and duties similar

and due process rights. The plaintiff has elected not to pursue these claims in this appeal.

[8] Division 2, § 2702, of the Waterbury city code provides in relevant part: "There shall be a retirement system for the City of Waterbury, the management of which shall be vested in a retirement board consisting of five members, not more than three of whom shall belong to any one political party, as follows: A member of the board of aldermen, the city comptroller and three electors of the City of Waterbury, one of whom shall be a participant in the retirement system and shall have been an officer or employee of the City of Waterbury for at least five years. . . ."

[9] Division 2, § 2703, of the Waterbury city code provides in relevant part: "The board shall adopt after a public hearing thereon, bylaws and regulations not inconsistent with the law and the provisions of this act; shall employ such actuarial, medical, clerical and other services as may be necessary for the efficient operation of the retirement system; and shall do all things necessary toward carrying out the purposes for which the retirement system is created. . . ."

to that of an administrative agency. Accordingly, we review the actions of the board under the "substantial evidence" standard that governs review of an administrative agency's actions.[10] "[R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Sengchanthong* v. *Commissioner of Motor Vehicles*, 281 Conn. 604, 609, 917 A.2d 942 (2007).

"The substantial evidence rule governs judicial review of administrative fact-finding . . . . An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . . It is fundamental that a plaintiff has the burden of proving that the [munic-

---

[10] We have previously employed the standard governing review of administrative agencies to municipal boards carrying out similar functions. See, e.g., *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, 285 Conn. 381, 427, 941 A.2d 868 (2008) (review of zoning board decision); *Rogers* v. *Board of Education*, 252 Conn. 753, 760–61, 749 A.2d 1173 (2000) (review of board of education's decision to terminate tenured teacher's employment contract). The same standard has also been used in reviewing the actions of a municipal retirement board. See, e.g., *Charette* v. *Waterbury*, 80 Conn. App. 232, 242–44, 834 A.2d 759 (2003), cert. denied, 267 Conn. 910, 840 A.2d 1172 (2004); *Alexander* v. *Retirement Board*, 57 Conn. App. 751, 757–58, 750 A.2d 1139, cert. denied, 254 Conn. 902, 755 A.2d 217 (2000).

ipal board], on the facts before [it], acted contrary to law and in abuse of [its] discretion . . . . The law is also well established that if the decision of the [munici-pal board] is reasonably supported by the evidence it must be sustained." (Citations omitted; internal quota-tion marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343–44, 757 A.2d 561 (2000). "This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly errone-ous or weight of the evidence standard of review." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 124, 830 A.2d 1121 (2003). "Where, how-ever, the [municipal board] has made a legal determina-tion, the scope of review ordinarily is plenary." (Internal quotation marks omitted.) *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 721, 780 A.2d 1 (2001).

At the outset, we note that the plaintiff challenges neither the board's factual finding that he is totally disabled from performing further duties as a police officer, nor its legal determination that he is eligible to receive a disability pension under article twenty-three, § 12, of the agreement. The question in this appeal, rather, is limited to whether the amount of disability pension awarded to the plaintiff—specifically, 57.5 per-cent of his annual compensation at the time of his retirement—was proper under article twenty-three of the agreement.

I

We begin with the plaintiff's contractual claims. Although the plaintiff concedes that "the [a]greement may not have expressly required that the board award the plaintiff some increase in pension because of his disability," he contends that, because the agreement provides for both service and disability pensions—

under article twenty-three, §§ 4 and 12, of the agreement, respectively—a "common sense interpretation" of the agreement "would certainly seem to require that vested pensioners be entitled to an increase due to their disabilities." The plaintiff also claims that the board improperly utilized a 2003 city ordinance in awarding him a disability pension in the amount of 57.5 percent of his annual compensation, and, therefore, that the board unilaterally changed the terms of the agreement in violation of MERA.

In response, the board claims that its award was proper under the unambiguous provisions in article twenty-three, § 12, of the agreement. The board also claims that there is no evidence in the record to support the plaintiff's claim that it relied on the 2003 city ordinance in calculating the amount of the plaintiff's disability pension award. We agree with the board.

A

"The law governing the construction of contracts is well settled. When a party asserts a claim that challenges the . . . construction of a contract, we must first ascertain whether the relevant language in the agreement is ambiguous. . . . A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . Accordingly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact . . . . Moreover, in construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Citations omitted; internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn.

1, 13–14, 938 A.2d 576 (2008). "If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Citation omitted; internal quotation marks omitted.) *Montoya* v. *Montoya*, 280 Conn. 605, 612, 909 A.2d 947 (2006). We examine the construction of the agreement in the present case "mindful of the fact that . . . we have a contract formed between two parties of relatively equal bargaining power." *Poole* v. *Waterbury*, 266 Conn. 68, 87, 831 A.2d 211 (2003).

Article twenty-three, § 12, of the agreement governs the award of disability pensions and provides in relevant part: "Any police participant totally and permanently disabled during the performance of essential duties pertaining to his employment by the City of Waterbury, irrespective of duration of his employment, shall upon application in a form prescribed by the Retirement Board, be retired for disability, provided proof of total disability is submitted to the Retirement Board substantiated: by reports of examinations to be made by at least two (2) impartial competent medical examiners appointed by the Retirement Board.

"The Retirement Board shall pay to each regular member employed in the Police Department who has been retired for disability according to the provisions of this Article or Section, a pension during the continuance of such disability. . . . The City of Waterbury guarantees that effective upon signing of this contract *no pension* payable to a police participant . . . on account of total and permanent disability sustained during the performance of essential duties pertaining to employment by the City of Waterbury as provided herein, *shall be less than one-half (1/2) the annual rate*

*of regular compensation, plus longevity of the disabled employee at the time of retirement.* It is specifically understood that any employee who is disabled for a period of twelve months may be retired at the city's discretion." (Emphasis added.)

Article twenty-three, § 4, of the agreement governs the award of service pensions and provides in relevant part: "Any police participant who satisfies the eligibility requirement of Section 3 hereof (that is, who has served as a member of the Police Department for at least fifteen [15] years and who has completed twenty [20] years of service with the City, regardless of age,) shall be entitled to an annual pension for life in an amount equal to one-half of the amount of compensation (as heretofore defined in Section 2, sub-paragraph 6 hereof) received by him, at the permanent rank or grade held by him at the time of his retirement, payable monthly. In the case of any police participant, eligible for retirement at his option, who shall continue in the service of the Police Department after the said date of eligibility for retirement, there shall be added to such pension, at the time of his permanent retirement, a sum equal to two and one-half (2.5%) percent of his said compensation, for each additional completed year he continues in said service until the date of his permanent retirement. . . ."

We conclude that the language in article twenty-three, § 12, of the agreement clearly and unambiguously provides that the board was prohibited only from awarding a disability pension *less than* 50 percent of an applicant's annual compensation.[11] Thus, a pension award

---

[11] For purposes of clarity, any reference to the term "annual compensation," in regard to what the plaintiff is entitled to receive under article twenty-three, § 12, of the agreement, includes the longevity payment owed to the plaintiff under article five of the agreement. Because the plaintiff was credited with twenty-three years of service as a city police officer, he is entitled to receive an annual longevity payment in the amount of $650, under article five, § 1, of the agreement.

under § 12 may, but is not required to, *exceed* 50 percent of an applicant's annual compensation. In addition, while article twenty-three, § 4, of the agreement provides a clear formula that the board was required to utilize when determining the amount of a service pension, the provisions of § 12 do *not* contain such a formula. Accordingly, we conclude that § 12 of the agreement gave the board broad discretion in deciding the specific amount of a disability pension, so long as the pension constituted at least 50 percent of an applicant's annual compensation. The board did not, therefore, breach the terms of article twenty-three, § 12, of the agreement when it awarded the plaintiff a disability pension in the amount of 57.5 percent of his annual compensation.

We disagree with the plaintiff's claim that, although the agreement does not expressly provide that a disability pension must be awarded in an amount greater than what he would be entitled to receive under a service pension, the fact that the agreement provides for two types of pensions requires, as a matter of "common sense interpretation," that a vested applicant be given a disability pension in some amount greater than what he is entitled to receive under his service pension. There is no provision in the agreement that requires the board to award an applicant a disability pension in excess of what he or she would have been entitled to receive under a service pension. We are prohibited from implying the existence of a term that is not expressly written in the agreement, because that would require us to rewrite the agreement for the parties. See, e.g., *Ramirez* v. *Health Net of the Northeast, Inc.*, supra, 285 Conn. 16 ("it is well settled that we will not import terms into [an] agreement . . . that are not reflected in the contract" [internal quotation marks omitted]); *Gibson* v. *Capano*, 241 Conn. 725, 732, 699 A.2d 68 (1997) ("[i]t is axiomatic that courts do not rewrite

contracts for the parties" [internal quotation marks omitted]). Accordingly, we conclude that the mere existence of both §§ 4 and 12 of article twenty-three in the agreement, without more, does not require the board to award the plaintiff a disability pension in an amount greater than what he would have been entitled to receive under a vested service pension.

B

The plaintiff next claims that, in awarding him a disability pension in the same amount he was entitled to receive under a service pension, the board improperly relied on § 35.13 (C) of a 2003 city ordinance entitled, "Final Amended Ordinance Regarding the Pension and Retirement System, Part II: Pensions and Retirement Provisions" (2003 ordinance). The plaintiff further claims that the board's reliance on § 35.13 (C) of the 2003 ordinance in determining the amount of his disability pension constituted a unilateral attempt to change the terms of the agreement in violation of MERA.[12] In response, the board asserts that there is no evidence that it relied on the 2003 ordinance in determining the plaintiff's disability award. The board claims, rather, that the record indicates that its decision was based on consideration of the proffered medical evidence and the terms of the agreement. The board further asserts that "the mere fact that [it] awarded [the] [p]laintiff a disability retirement equal to his service pension is not

---

[12] The plaintiff proffered these same claims on appeal to the trial court. The board agreed during the trial court hearing, however, that the 2003 ordinance was passed after the effective date of the agreement and that the 2003 ordinance could not, therefore, in any way control the award of the plaintiff's disability pension. The trial court determined that, since the board agreed the 2003 ordinance did not control, the plaintiff's claim regarding the 2003 ordinance was rendered moot, and the court, therefore, did not address the plaintiff's claim. Accordingly, on appeal to this court, the plaintiff further claims that the trial court improperly declined to review his 2003 ordinance claim simply on the basis of the board having conceded that it is not controlling.

evidence [that] it applied the pension ordinance in reaching its determination." We agree with the board.

Section 35.13 (C) of the 2003 ordinance, which outlines the terms and conditions for the award of disability pensions for firefighters and police officers, provides in relevant part: "Any Firefighter or Police Participant who incurs a Work-Related Disability In the Line of Duty, regardless of such Participant's Years of Service, shall be entitled to a Pension in an amount equal to the greater of (i) the Firefighter or Police Participant's Accrued Benefit at the time of such Work-Related Disability or (ii) 50% of the Firefighter or Police Participant's Final Average Base Pay, regardless of such Participant's Years of Service." Under § 35.13 (C) of the 2003 ordinance, therefore, the plaintiff would receive the same amount that he was awarded as a disability pension—namely, 57.5 percent of his annual compensation—which, incidentally, is the same amount he would have been entitled to receive as a service pension pursuant to article twenty-three, § 4, of the agreement.[13]

There is no evidence in the record that the board relied on the 2003 ordinance in determining the plaintiff's disability pension award. The board explicitly stated that the plaintiff's pension was awarded "[a]fter review of the independent medical examinations, [and] after review of the . . . police contract . . . ." In support of his claim, however, the plaintiff cites the following exchange between the trial court and the board's counsel, made during the hearing before the trial court on March 2, 2006. The court stated: "Based on [article twenty-three, § 12, of the agreement], was that how the [board] came out with 57.5 percent for [the plaintiff]?" The board's counsel replied: "Yes, they looked at what 50 percent of regular compensation was and they looked at what [the plaintiff's] service pension would

---

[13] See footnote 5 of this opinion.

be and that was 57.5 percent based upon years of service, 2.5 percent for each year of service. That comes out to 57.5 percent. They awarded the 57.5 percent pension. That certainly is not inconsistent with this provision."

The board's counsel made no mention of the 2003 ordinance in that exchange. A disability pension award of 57.5 percent of the plaintiff's annual compensation was clearly within the discretion of the board under article twenty-three, § 12, of the agreement. See part I A of this opinion. Accordingly, since the amount of the plaintiff's disability pension does not contravene the parameters of the board's discretion or the terms of article twenty-three, § 12, of the agreement, we disagree with the plaintiff's claim that the board improperly relied on the 2003 ordinance.

## II

### A

We next address the plaintiff's claim that *Downey* v. *Retirement Board*, supra, 66 Conn. App. 105, required the board to award him a disability pension greater than what he was entitled to receive under a service pension, despite the fact that the agreement did not expressly provide for such additional compensation.

In response, the board contends that the trial court properly concluded that *Downey* is distinguishable,[14] and, therefore, that *Downey* does not control the

---

[14] Specifically, the trial court found that, unlike in *Downey*, in the present case: (1) the board does not argue that the plaintiff should receive a lesser amount than he was entitled to receive under a service pension; (2) the medical evidence in the record, concerning the nature and extent of the plaintiff's disabilities, was reviewed and considered by the board prior to making its decision regarding the amount of disability pension awarded to the plaintiff; and (3) the provisions of article twenty-three, § 12, in the agreement differ from the contractual provisions in *Downey* that controlled the award of disability pensions.

board's actions in this case. The board further claims that the trial court properly determined that, in *Downey*, the Appellate Court did *not* order the retirement board to award an additional amount because of that plaintiff's disabilities, but, rather, simply concluded that the retirement board was required to consider medical evidence in the record when awarding a disability pension.

In *Downey* v. *Retirement Board*, supra, 66 Conn. App. 107, the board awarded the plaintiff, a former Waterbury firefighter, a disability pension in the amount of 62 percent of his salary. The plaintiff claimed, inter alia, that the amount of the pension was inequitable because it provided no additional amount in consideration of his proven disabilities. Id., 112. Specifically, the plaintiff had asserted that he was entitled to the amount that he would have received under his vested retirement pension, based on his years of service, plus some additional amount in compensation for his disabilities. The Appellate Court determined that "the board based its decision on thirty-one years of service and that the medical opinion of the two independent physicians appointed by the board either was not considered or was disbelieved"; id., 116; and concluded that "the board may not ignore the plaintiff's medical reports, physical condition and disability when determining the plaintiff's pension award." Id., 114. The court further determined that "[t]he plaintiff is entitled to his vested pension based on his years of service, and the plaintiff's disability, if proven, would necessitate an increase in his pension, not the reduction proposed by the defendants." Id., 113. The Appellate Court did not, however, order the retirement board to pay the plaintiff an additional amount greater than what he was entitled to receive under his service pension; id., 118; but rather remanded the case to the board for consideration of the medical evidence in the record and "a determination of *whether*

*to* increase the plaintiff's pension award in light of the plaintiff's disabilities." (Emphasis added.) Id., 112.

The dispositive question in this appeal, therefore, is whether *Downey* requires a municipal retirement board to award an applicant a disability pension in an amount greater than what he or she would be entitled to receive under a vested years of service pension, regardless of whether such additional compensation is provided for in a controlling collective bargaining agreement. In *Downey,* the Appellate Court posited two reasons for arriving at its conclusion that the plaintiff would be entitled to receive additional compensation in excess of his service pension. First, the Appellate Court determined that the decision of the trial court in *Battaglia* v. *Retirement Board,* Superior Court, judicial district of Waterbury, Docket No. 123090 (June 5, 1995), "supports the plaintiff's argument . . . that he should receive at least some additional pension because of his disability." *Downey* v. *Retirement Board,* supra, 66 Conn. App. 113. The Appellate Court then recognized, however, that "*Battaglia* merely proposes that, *when* a board awards an amount for disability that is over and above what would have been awarded at normal retirement, the board has the discretion to determine what the increased percentage will be"; id., 114; and that "*Battaglia* offers no guidance for a situation such as in the present case in which a firefighter is denied any additional pension." (Emphasis added.) Id. Accordingly, the decision in *Battaglia* offers no support for the contention that a municipal retirement board is required to award a police officer additional monetary compensation—greater than what he or she is entitled to receive under a service pension—if the board determines that the officer suffers from a disability, and a contract controlling the award of such pensions does not expressly provide for additional compensation.

The Appellate Court also relied on § 7-433c to justify why a municipal firefighter is entitled to additional compensation for a disability pension. Id., 115. Specifically, the Appellate Court concluded that § 7-433c "provides for *additional* disability compensation for firefighters who suffer from hypertension"; (emphasis in original) id.; and that it, therefore, "demonstrates a clear policy of creating additional benefits for certain classes of disabled municipal employees." Id. We conclude that the Appellate Court's reliance on § 7-433c as evidence of public policy in providing additional *monetary* compensation was improper, however, to the extent it was used to justify a determination that a retirement board is *required* to provide a disability pension in excess of what an applicant would be entitled to receive under a service pension, even when the terms of a controlling collective bargaining agreement *do not* expressly provide for such additional compensation.

It is well settled that the "special compensation," or the "outright bonus," of § 7-433c "is that the claimant is not required to prove that the heart disease is causally connected to [his or her] employment, which he [or she] would ordinarily have to establish in order to receive benefits pursuant to the Workers' Compensation Act." (Internal quotation marks omitted.) *Bergeson* v. *New London*, 269 Conn. 763, 778, 850 A.2d 184 (2004); see also *Carriero* v. *Naugatuck*, 243 Conn. 747, 754–55, 707 A.2d 706 (1998) (same). The benefits provided under § 7-433c *are*, however, payable and administered under the Workers' Compensation Act, contained in chapter 568 of the General Statutes, and "the type and amount of benefits available pursuant to § 7-433c are the same as those under the Workers' Compensation Act . . . ." *Bergeson* v. *New London*, supra, 778. In fact, a police officer or firefighter "may, if the facts so warrant, elect to proceed under *either* chapter 568 or § 7-433c." (Emphasis added; internal quotation marks omitted.)

Id., 769. The monetary benefits received under § 7-433c are the same as those available to anyone with similar disabilities who receives workers' compensation benefits under chapter 568; that is, one would *not* receive additional compensation simply by receiving benefits under § 7-433c rather than under chapter 568. See *Felia* v. *Westport*, 214 Conn. 181, 185, 571 A.2d 89 (1990) ("the measurement of the plaintiff's benefits under [§ 7-433c] is identical to the benefits that may be awarded to a plaintiff under chapter 568").

Section 7-433c (a) further provides in relevant part: "The benefits provided by this section *shall be in lieu of* any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 *or the municipal or state retirement system under which he is covered*, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. . . ." (Emphasis added.) This provision emphasizes that benefits received under § 7-433c are separate from amounts awarded under municipal disability pensions, the terms and conditions of which are controlled by collective bargaining agreements between the respective municipalities and police or firefighters' unions. Accordingly, we conclude that the existence of § 7-433c, and its "outright bonus" of relieving police and firefighters from proving that their heart or hypertension disability is causally connected to their employment, does *not* evince a public policy requiring that a municipal retirement board award a disability pension in excess of what the applicant would have been entitled to receive under a vested service pension, absent a controlling contractual provision to the contrary. Thus, to the extent that *Downey* v. *Retirement Board*, supra, 66 Conn. App. 105, required municipal retirement

boards to award disability pensions in an amount that exceeds what individual applicants would be entitled to receive under a vested service pension, it is over-ruled.[15] In the present case, therefore, the trial court properly determined that "the *Downey* decision does not stand for the proposition that the [b]oard was required to award the [p]laintiff any additional amount of compensation on account of his disability,"[16] and we conclude that the board's decision not to award the plaintiff an additional pension amount, on the basis of the conclusions in *Downey*, was not illegal, arbitrary or an abuse of its discretion.

B

The plaintiff also claims that the board improperly ignored the proffered medical evidence in awarding the plaintiff's disability pension. Specifically, the plaintiff claims that the board ignored the medical evidence in the record because it "gave no indication that it considered the substance of the information contained in the reports and never discussed the extent of the [p]laintiff's disabilities, the combined effect of his disabilities, or when or how the [p]laintiff's disabilities came

[15] The defendants in *Downey* v. *Retirement Board*, supra, 66 Conn. App. 112, asserted that "a disability pension can include an award for the disability and still properly be an amount that is *less than* the disabled firefighter would have been entitled to if he had applied for a service pension." (Emphasis added.) In the present case, however, the plaintiff was not awarded a disability pension in an amount less than he would have been entitled to receive under a service pension, and neither party proffers a claim that a disability pension may properly be awarded in an amount less than what an applicant would be entitled to receive under a service pension. We do not, therefore, address the continuing validity of such a claim in the present case.

[16] Our decision is further supported by the fact that, unlike the plaintiff in *Downey*, the plaintiff in the present case conceded during oral argument before this court that he did *not* make a claim in equity. In *Downey* v. *Retirement Board*, supra, 66 Conn. App. 112, the plaintiff explicitly claimed "that the [trial] court improperly [determined] that the disability pension awarded to him was *equitable* . . . ." (Emphasis added.)

about." In response, the board claims that the record clearly indicates that it rendered its decision after review of the proffered independent medical examinations.

We agree with the plaintiff's contention that municipal retirement boards are required to consider medical evidence in the record, pertaining to an applicant's disability, when rendering a disability pension award. *Downey* v. *Retirement Board*, supra, 66 Conn. App. 114, 116–18. The record clearly indicates, however, that the board *did* consider the proffered medical evidence regarding the plaintiff's disabilities in determining his pension award. During the hearing on June 10, 2004, at which the board considered the plaintiff's application, board member J. Paul Vance, Jr., asked: "Are there any motions with regard to [the plaintiff's] disability application?" Board member Patrick Jones directly responded to Vance's inquiry by stating: "*After review of the independent medical examinations*, after review of the . . . police contract I make a motion to approve a disability pension of $38,989.60." (Emphasis added.) The motion was, thereafter, unanimously approved. The fact that the board did not conduct a detailed analysis of the plaintiff's disabilities on the record, at the hearing, in no way proves that it did not consider the substance of the medical evidence in rendering its decision, especially when its members specifically and unequivocally stated on the record that the board reviewed the proffered medical evidence. Furthermore, nothing in the record evinces a conscious disregard of the medical evidence by the board. Accordingly, we conclude that the record indicates that the board properly reviewed the medical evidence when determining the plaintiff's disability pension, and, therefore, that its subsequent pension award was not illegal, arbitrary or an abuse of discretion.[17]

---

[17] The plaintiff claims that, even if *Downey* is *not* controlling, the decision of the board to award him a disability pension in the same amount he was

## III

The plaintiff's final claim is that the trial court improperly concluded that the board was not estopped from awarding him a disability pension less than 76 percent of his annual compensation. Specifically, although the plaintiff admits that the agreement did *not* require the board to award 76 percent disability pensions to applicants with heart or hypertension disability, he nevertheless claims that the board should be estopped from awarding him less than a 76 percent disability pension because: (1) the board has established a custom, over the course of decades, of awarding 76 percent heart or hypertension disability pensions to police officers and firefighters, including three such awards to police officers in 2003; (2) as a result of this custom, he expected to be awarded a 76 percent hypertension disability; and (3) he worked twenty-three years as a city police officer and made contributions to the pension system in reliance on this expectation. The plaintiff further asserts that he will incur a substantial financial loss—namely, the monetary difference between 76 percent and 57.5 percent of his annual compensation—if the board is

entitled to receive as a service pension was not supported by substantial evidence. Specifically, the plaintiff claims that the board's pension award was not justified on the basis of three of the four physicians who examined the plaintiff, at the board's request, having concluded that the plaintiff is physically able to work other, less strenuous jobs. Even if we were to assume without deciding that this evidence was the board's *only* justification for the amount of its award, the plaintiff has not met his burden of proving that the board's award was illegal or an abuse of discretion. We have already concluded that the board's disability pension award, in the amount of 57.5 percent of the plaintiff's annual compensation, was properly within its discretion under article twenty-three, § 12, of the agreement. The plaintiff does not argue that article twenty-three, § 12, of the agreement is illegal, nor does he cite any authority, other than *Downey*, in asserting that the amount the board awarded was illegal. Accordingly, we conclude that the plaintiff has failed to show that the board's decision was not supported by substantial evidence. *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 343–44.

not estopped from awarding him less than a 76 percent disability pension.

In response, the board contends that the plaintiff has failed to prove that it has established a custom of awarding 76 percent disability pensions to police and firefighters who suffer from heart or hypertension disability. Specifically, the board asserts that the plaintiff provided it with no documentation or evidence in support of his claim of an established custom, other than general statements made during the June 10, 2004 meeting. Furthermore, the board contends that the documentary evidence of prior disability awards submitted to the trial court, pursuant to its September 9, 2005 order granting the plaintiff's motion to expand the return of record, does not adequately support his claim because: (1) the majority of the pension recipients in the proffered evidence were firefighters whose pensions were governed by a different collective bargaining agreement than that which controls in the present case; and (2) the documentary evidence was never submitted to the board in the first instance. Finally, the board relies on the trial court's memorandum of decision and claims that the plaintiff has failed to prove the elements necessary for the application of equitable estoppel.

The standards governing the application of equitable estoppel are well established. "There are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." (Internal quotation marks omitted.) *Fadner* v. *Commissioner of Revenue Services*, 281 Conn. 719, 726, 917 A.2d 540 (2007). "[I]n order for a court to invoke municipal estoppel, the aggrieved party must establish that: (1) an authorized agent of the municipality had

done or said something calculated or intended to induce the party to believe that certain facts existed and to act on that belief; (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its position in reliance on those facts; and (4) the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents." (Internal quotation marks omitted.) *Cortese* v. *Planning & Zoning Board of Appeals*, 274 Conn. 411, 418, 876 A.2d 540 (2005).

"The party claiming estoppel . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The legal conclusions of the trial court will stand, however, only if they are legally and logically correct and are consistent with the facts of the case. . . . Accordingly, we will reverse the trial court's legal conclusions regarding estoppel only if they involve an erroneous application of the law." (Internal quotation marks omitted.) *Fadner* v. *Commissioner of Revenue Services*, supra, 281 Conn. 726.

The trial court determined that the plaintiff had failed to proffer evidence that would justify estopping the board from awarding him less than a 76 percent disability pension for his hypertension. Although the plaintiff submitted evidence to the trial court of the board having awarded 76 percent disability pensions to fourteen people, on account of heart or hypertension disabilities, the trial court found that only three of the fourteen were police officers whose pension awards were subject to

the agreement, and, therefore, only the information regarding those three pension recipients was relevant to the plaintiff's claim. The trial court then concluded that this evidence did not show that, by awarding 76 percent disability pensions to three police officers in 2003, the board had calculated or intended to: (1) create in the plaintiff an expectation that he, too, would receive a 76 percent disability pension; or (2) have the plaintiff continue working solely in reliance of this expectation. The trial court determined, therefore, that the plaintiff failed to meet his burden of proof in establishing the requisite elements of an estoppel claim. Upon review of this conclusion rendered by the trial court, we are not "left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) Id. Accordingly, we conclude that the trial court properly determined that the board was not estopped from awarding the plaintiff less than a 76 percent disability pension.

The judgment is affirmed.

In this opinion the other justices concurred.